IDA MAY LUDDEN, Appellee, v. LILLIE BUTTERS et al., Appellants.

TRUSTS: Resulting Trusts—Conveyance to Non-Owner. Where property is acquired by one person, but is conveyed by the grantor to a third person, without any arrangement or understanding with reference thereto, a trust results in favor of the one actually owning the property.

PRINCIPLE APPLIED: A father instituted bastardy proceedings for the seduction of his minor daughter. At the trial, the court fixed the amount to be paid by defendant for the support of the unborn child at $600. The mother (outside of court) insisted that $600 was inadequate. After much discussion concerning the support of the child, the proceeding was settled by the defendant's deeding to the mother 160 acres of land, and assigning to her a note for $125. The defendant wanted to deed the property to the daughter, but the mother insisted that the daughter was too young, and' that she (the mother) "would be the one to support the child." The daughter had nothing to do with the settlement. The mother did care for and support the daughter and child for some two years. The daughter then married. The property so conveyed was sold by the mother and converted to her own use.

*Held*, the mother must account to the daughter for the proceeds.

PARTIES: Plaintiffs—Husband and Wife—Injury to Minor. Principle recognized that the mother of a minor may not (the father being alive, with his family, and under no disability) maintain an action for an injury to her minor child, i. e., the seduction of the minor.

**ESTOPPEL:**    Equitable Estoppel—Absence of Prejudice.    Absence
3   of prejudice excludes estoppel.

*Appeal from Buchanan District Court.*—CHARLES W. MUL-
LAN, Judge.

WEDNESDAY, JUNE 20, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

SUIT to have certain property decreed to have been
transferred to defendant in trust for plaintiff, and that
same be turned over to her. Decree was entered against de-
fendant, from which she appeals.—*Affirmed.*

*Cook & Cook,* for appellants.

*Hasner & Hasner* and *G. W. Dawson,* for appellee.

LADD, J.—I. The plaintiff is daughter
1. TRUSTS: re-     of defendant and L. M. Stout, from whom
sulting trusts:
conveyance to     defendant has been divorced. In February,
non-owner.        1910, plantiff's parents learned that she had
become pregnant by one Henry Holman. Bastardy pro-
ceedings were immediately instituted by Stout, and, as Hol-
man made no defense, the court fixed the amount to be paid
to the plaintiff herein for the support of the child at $600;
but, upon announcement of the decision, the defendant,
who was present, declared that "she would not stand for
that," and the court is said to have remarked to Holman:
"If you could get the $600 in court inside of 3 days, I will
put you at $600." After some parley, defendant insisted
that she would not "stand for no $600," and all parties re-
tired to a lawyer's office across the street. Holman testi-
fied that she there "said the way she would settle with me
would be to take all I had in property. I did not settle
with her, but I deeded to her 160 acres of land." He also
transferred a note for $125 given for the rent of the land.

"Q. That deed and that note was given for the purpose of settling up the charge against you of bastardy? A. Yes. * * * Q. You wanted to settle it, didn't you? A. She said she would put me as far as the law would let me go; so I thought I would settle it any way to get out of it. * * * Q. You said you were willing to deed the farm to her, didn't you? A. No, sir, I didn't want to deed to her, but she said I had to deed it to her. Q. Her husband assented to that? A. I wanted to deed it to Ida. Q. You did say in the office that you were willing to deed to Mrs. Stout? A. Nothing— Q. You said you would? A. That is all the way I could settle, and it is the way I settled. I wouldn't say I was willing. I wasn't deeding to the one I wanted to deed to, but I had to. I deeded it to Mrs. Stout. I gave her an order for the note, because I had to, to settle it, not because I was willing."

Stout corroborated Holman as to what his wife had said in the court room, and testified that she said—

"She would have to have more; that she would have to have the 160 acres of land and also the note. Mr. Holman said he would turn over the land; he was willing to turn over that land to support Ida—that is, my daughter—and her child. Mr. Holman proposed first to give it to my daughter, and Mrs. Stout said 'No;' that she was under age —that would not do. She said if he would give it to her, it would be all right; she would be the one to support the child and her too. She would take care of her and her child."

The plaintiff testified that she was then 17 years of age; that she had nothing to do with the settlement; that it was made by her father and defendant. The child was born in June, 1910, and plaintiff and the child were cared for by defendant until April, 1912, when plaintiff married, and the child was taken by her, 3 or 4 months later. The defend-

ant realized something over $1,700 out of the Oklahoma land, and has appropriated it to her own use.

II.  The plaintiff contends that the property out of which this amount was realized was conveyed to defendant in trust for her daughter, to enable her to care for the child, and that, therefore, in the performance of her obligation as trustee of a resulting trust, defendant must turn over the proceeds of the land to plaintiff as *cestui que trust.* On the other hand, defendant insists that the conveyance and transfer of the note to her was in settlement of Holman's criminal and civil liability for the seduction of defendant's daughter.  As defendant's husband was alive and living with her, she had no claim or cause of action against Holman for such alleged seduction.  Section 3471, Code, 1897.  The daughter, however, might maintain an action therefor (Section 3470, Code) ; and in the bastardy proceedings, the court might charge defendant "with the maintenance of the child in such manner as the court shall direct." Section 5635, Code.  This may be by exacting periodical payments to the mother of the bastard (*State v. Ginger,* 80 Iowa 574), or payment to her of a lump sum, or in such other manner as the court, in view of the situation of the parties, may determine.  Here, the court had concluded to require Holman to pay a lump sum to the mother of the unborn child, when defendant intervened, and insisted that the amount was insufficient, and demanded all the accused had.  For what and whom?  Not for defendant, for she had no claim against him.  Not in settlement of any claim her husband may have urged for loss of his daughter's services, under Section 3471 of the Code; for he had made none.  Nor does the evidence justify the conclusion that the conveyance was executed in compounding an alleged felony, or by way of extortion.  True, she told Holman she would put him "as far as the law would let him go;" but

2. PARTIES:
plaintiffs:
husband and
wife: in-
jury to minor.

it is undisputed that all parties had gone to court for the purpose of having their difficulties adjusted in court. Holman testified that "she said she would settle in court, and we went down to Marion. * * * I said that, if nothing else would do but settle in court, I would go down and settle in court."

The bastardy proceeding was pending then, and to that both must have referred. Her only objection to the allowance by the court appears to have been that it was not enough, for she declared she "would not stand for no $600," and immediately demanded all he had, i. e., a deed to the land, and delivery of the note. For what? No claim other than that involved in the bastardy proceedings was asserted, and the only inference to be drawn from what happened is that the conveyance and delivery of the note were demanded and made in settlement of the bastardy proceedings. As the court was not advised of what had been done, judgment was entered in accordance with the announcement heretofore referred to. When Holman suggested that the conveyance be made to the daughter, the only objection raised by defendant was that the daughter was under age, and that defendant would have to care for her as well as the child. But there was no agreement at the time with respect to their care, and no renunciation by plaintiff of her right to the property received in settlement. The land and note, then, though transferred to defendant, became the property of plaintiff, to enable her to care for and support her unborn child. That where property to which one person acquired ownership from another is conveyed by the latter to a third person, without any arrangement or understanding with reference thereto, a resulting trust arises, and such third person holds title for the benefit of the party acquiring such ownership, is elementary law, in support of which the citation of authorities is unnecessary; and we are of opinion that title to the note and Oklahoma

land was taken by defendant as trustee for plaintiff, and that she is bound to account for the proceeds derived from the collection of the note and the sale of the land.

3. ESTOPPEL:
equitable es-
toppel: ab-
sence of prej-
udice.

III.   The plaintiff and her husband borrowed of defendant $200 on October 17, 1914, and executed their note therefor. This money was some of the proceeds of the Oklahoma land, and defendant pleads this transaction by way of estoppel. Manifestly, defendant could not have been prejudiced by being induced to pay money belonging to plaintiff over to her as a loan. At most, the circumstance tended to sustain defendant's claim of ownership. In the absence of prejudice, there could be no estoppel.

IV.   In June, 1913, defendant sued her then husband, L. M. Stout, for a divorce, and in November following, the parties entered into a stipulation, under the terms of which Stout was to retain 160 acres of land in his name, and pay her $500, and she was to retain the Oklahoma land, and, upon the entry of decree of divorce, their property rights were determined as stipulated.   She pleaded that plaintiff knew of the negotiations with reference to the property rights, and that the Oklahoma land was being set off to defendant as belonging to her in the division of property, and made no objection thereto.   But plaintiff testified that she was away at the time, and had no knowledge concerning the stipulation or of the suit for divorce, until the day the decree was entered, and about that time, heard the way the property was divided.   The defendant testified, in a general way, that the matter of settlement of the property interests was discussed, so that plaintiff knew of the matters under discussion, and knew that defendant was to have the Oklahoma land and $500; and that the latter had told her how the parties to the divorce suit had settled.

"Q.   Did your daughter discuss with you the divorce and the property affairs after it was made?   A.   There

was nothing said to me, objected to nothing until after I was married. I thought everything was all right and settled—settled just as they wanted me to."

For all that appears, she might have told her daughter after all had been done; and in any event, we do not think the evidence sufficient to overcome plaintiff's denial of knowledge, even though the latter's husband may have advised the settlement of the property rights of her parents. The trial court credited defendant for all above $1,200 as compensation for the care she had bestowed upon plaintiff and her child, and its decree awarding recovery for that amount is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.